Michael FOLSOM, Appellant,

v.

STATE of Alaska, Appellee.

No. A–990.

Court of Appeals of Alaska.

March 27, 1987.

Douglas Paul Elliott, Robert M. Goldberg & Associates, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Ronald W. Lorensen, Acting Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Michael Folsom was convicted of two counts of misconduct involving a controlled substance in the second degree (delivery of heroin) in violation of AS 11.71.020(a). Superior Court Judge Karl S. Johnstone sentenced Folsom to concurrent terms of ten years with four years suspended. Folsom appeals, alleging that the charges against him should have been dismissed because he was entrapped and because his rights to due process and to fair and just treatment in the course of investigations were violated. Folsom also contends that the sentencing court improperly rejected a proposed mitigating factor, incorrectly denied referral of his case to a three-judge panel, and imposed an excessive sentence. We affirm.

The charges in this case stemmed from the efforts of an undercover informant, Jerry Raygor. The only version of the incident relevant for present purposes is Folsom's. In support of his entrapment defense, Folsom testified that he had known Raygor for several months before the dates of the sales. Folsom said that he had met Raygor at the home of their mutual drug supplier; both would go there daily to wait for heroin. Folsom knew Raygor only as Jerry and did not know where he lived. Although Folsom did not have much contact with Raygor, he considered Raygor his friend. Folsom testified that he was addicted to heroin and believed Raygor was addicted too.

According to Folsom, shortly before the transactions charged in this case, Raygor called Folsom at home while Folsom was out and left an urgent message with Folsom's wife, asking Folsom to return the call. Folsom ignored the message. Raygor later appeared at Folsom's house. He was angry, and berated Folsom for failing to return the telephone call. Folsom accompanied Raygor outside, to Raygor's car. There, Raygor introduced Folsom to "Eddie from the North Slope," who was in reality undercover police officer Eduardo Campoamor.

Inside Raygor's car, Raygor told Folsom that he needed something "to get him well." Folsom said, "well, I know where I get mine." Raygor then specifically asked Folsom to get him some heroin. Raygor and Folsom briefly discussed how much heroin it would take to get Raygor well. Folsom testified that he "almost didn't want to do it because [Raygor] would say it wasn't no good and then I would be stuck

in the middle of something I did for him...." Folsom believed that Raygor had implied that he was sick by saying that he was in a hurry and asking how much it would take "to get well." He also noted that Raygor appeared edgy. According to Folsom, Campoamor remained silent, thumbing through "a big wad of money."

Folsom then explained to Raygor that he was in no position to guarantee that Raygor would get well; Raygor indicated that he was willing to go through with the transaction without a guarantee. Campoamor intervened, stating that they should buy six bags of heroin because of the extent of Raygor's habit. Folsom set the cost at $100 per bag. When asked, Folsom claimed he wanted no money for himself, saying, "they'll probably take care of me inside, as far as me getting well." Campoamor gave Folsom $600 in cash. After the transaction was completed, Folsom agreed to get more heroin the next day if Raygor needed it, and agreed to let Campoamor pick up the heroin, because Raygor was not able to come himself.

Two days later, Campoamor appeared at Folsom's house while Folsom was out. Campoamor asked Folsom's wife to get some heroin for him. She agreed, and was beginning to get ready to go out when Folsom arrived. Folsom then decided to go with Campoamor. Once outside the house, Folsom expressed reluctance about the transaction, saying, "I'll do this, but ... I've got a lot to lose." Campoamor assured Folsom that there was nothing to worry about, and Folsom completed the delivery, using the same source as the day before.

■ Folsom contends that this account of the two drug transactions was sufficient to support a finding of entrapment. We disagree. Under Alaska law, the defendant bears the burden of establishing entrapment by a preponderance of the evidence. AS 11.81.900(b)(1)(B); *see also Coffey v. State*, 585 P.2d 514, 521 (Alaska 1978). Entrapment is measured by an objective standard and is an issue for the court rather than the jury. *Batson v. State*, 568 P.2d 973, 978 (Alaska 1977);

*Grossman v. State*, 457 P.2d 226, 229–30 (Alaska 1969). The focus of the issue is whether the state's conduct "falls below an acceptable standard for the fair and honorable administration of justice." *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978).

■ In the present case, Judge Johnstone ruled that, even under Folsom's version of the incidents, entrapment had not been established. This finding is not clearly erroneous. *See Blakesly v. State*, 715 P.2d 269, 271 (Alaska App.1986). As to the first transaction, Folsom's own testimony establishes, at most, a casual friendship between Folsom and Raygor, a single request for drugs on Raygor's part, and a belief by Folsom—based on his past experience with Raygor and on Raygor's behavior at the time of the request—that Raygor needed the heroin to avoid withdrawal. There is even less evidence to support Folsom's claim of entrapment as to the second transaction.

This case is readily distinguishable from *Pascu v. State*, 577 P.2d at 1067, which involved repeated entreaties to the defendant by an informant; the entreaties were based expressly on a close personal friendship that existed between the informant and the defendant, and they included an explicit claim that the informant was in desperate need of heroin. Under the circumstances of the present case, we find no comparable conduct and conclude that the trial court did not err in rejecting the entrapment claim.

Folsom separately raises two claims that are closely related to his entrapment defense. Relying on *People v. Isaacson*, 44 N.Y.2d 511, 406 N.Y.S.2d 714, 378 N.E.2d 78 (1978), Folsom maintains that his constitutional right to due process was violated by the police conduct in the present case. He also argues that his right to fair and just treatment under the Alaska Constitution, Article 1, section 7, has been violated. Given the lack of evidence to support Folsom's entrapment defense, we find these arguments to be without merit.

■ In espousing the objective test for the defense of entrapment, the Alaska Su-

preme Court implicitly recognized that this approach was compatible with, if not mandated by, the due process clause of the Alaska Constitution. Alaska Const. art. 1, § 7; see Pascu v. State, 577 P.2d at 1066. To the extent police conduct violates notions of fundamental fairness and is causally related to the commission of an offense by the accused, that conduct will amount to entrapment under the Alaska test. See Anchorage v. Flanagan, 649 P.2d 957 (Alaska App.1982). Thus, when, as in this case, causality is not in issue, the standard for entrapment under Alaska law is in effect co-extensive with the protections included within the Alaska Constitution's requirement of due process. In the present case, then, our finding that the challenged police conduct did not amount to entrapment is a fortiori dispositive of Folsom's separate due process argument.

■■■ A similar analysis applies to Folsom's argument under the "fair and just treatment in the course of legislative and executive investigations" clause of Article 1, section 7 of the Alaska Constitution. This clause was included in our constitution to protect against abuses of the type experienced during the McCarthy era, and its application to routine criminal investigations has never been determined. See Anchorage v. Flanagan, 649 P.2d at 962; II Proceedings of the Alaska Constitutional Convention (PACC) 1446–49 (January 7, 1956).[1] Assuming the clause to be applica-

ble in the current context, however, we can think of no good reason—and Folsom has suggested none—why its protections should be construed to be broader than those separately assured by the Alaska Supreme Court's decision in Pascu v. State. Again, we find that our decision of the entrapment issue subsumes Folsom's fair and just treatment clause argument.[2]

■■ The final issue raised by Folsom with respect to his conviction pertains to the disappearance of Jerry Raygor. Folsom asserts that the state's inability to produce Raygor deprived him of evidence favorable to his entrapment defense and therefore amounted to a discovery violation and a breach of his right to due process.

In ruling that Folsom failed to establish his entrapment defense, however, we have accepted Folsom's account of the offenses for which he was convicted. Raygor's testimony would, at best, have substantiated Folsom's version. Thus, even assuming that Raygor's unavailability is attributable to the state's misconduct, it is apparent that Folsom has suffered no prejudice to his entrapment claim.

■■ Folsom also raises several claims with respect to his sentence. The two counts for which Folsom was convicted are class A felonies, AS 11.71.020(b). The maximum penalty for the offenses is a term of twenty years per count. AS 12.55.125(c). Because Folsom had previously been convicted of a felony, he was subject to a

---

1. Article I, section 7, as originally proposed was comprised of the sentence "No person shall be deprived of life, liberty, or property, without due process of law." Delegate Victor Rivers proposed the following amendment: "The right of a person to due process of law shall not be infringed by the use of the legislature's investigative power." In subsequent discussion Delegate Ralph Rivers and Delegate Taylor both argued for the proposed amendment and specifically referred to its purpose as curbing the kinds of abuses of the legislature's investigative powers which had occurred during the McCarthy hearings conducted by Congress. Delegate Hellenthal added that abuses of executive investigations should also be addressed. Victor Rivers' amendment was amended to read: "The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed." This language was adopted. II PACC 1469 (January 7, 1956).

2. Folsom also suggests that the Alaska Constitution's equal protection clause, Alaska Const. art. 1, § 1, was violated by selective enforcement of the provisions against him. The record fails to support Folsom's claim as a factual matter, and Folsom has cited no persuasive authority to support it as a legal matter. We hold this argument to be without merit. Folsom has also suggested that his rights to due process and equal protection were violated by the failure of the police to seek prior judicial approval of the undercover investigation relied on in this case. The proposition advanced by Folsom is akin to that espoused in Justice Dimond's concurrence in Pascu v. State, 577 P.2d at 1069–70. This position, however, was rejected by the majority of the Pascu court. See also State v. Glass, 583 P.2d 872 (Alaska 1978).

presumptive term of ten years for each count. AS 12.55.125(c)(3). Prior to sentencing, Folsom alleged four statutory mitigating factors, none of which was contested by the state. Judge Johnstone accepted three of the factors but rejected one, concluding that Folsom had not shown that he played a minor role as an accomplice in the commission of the offenses. AS 12.55.-155(d)(2).

Folsom alleges that this finding is incorrect. We disagree. There was ample evidence to support Judge Johnstone's conclusion that Folsom acted as a principal rather than as an accomplice. The judge's rejection of this mitigating factor was not clearly erroneous. *Juneby v. State*, 641 P.2d 823, 834 (Alaska App.1982), *modified on other grounds*, 665 P.2d 30 (Alaska App. 1983).

Folsom next asserts that the sentencing court gave inadequate weight to his rehabilitation in declining to adjust his presumptive term down to five years for each count—the maximum downward adjustment permissible by a single judge under AS 12.55.125(b). Based on the three mitigating factors Folsom established, Judge Johnstone adjusted each count from the ten-year presumptive term to ten years with four suspended. In reaching his sentencing decision, Judge Johnstone gave appropriate consideration to all of the relevant sentencing criteria, including the need for Folsom's rehabilitation. *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970). While the total term of ten years with four years suspended received by Folsom is undoubtedly severe, we have independently examined the entire sentencing record and conclude that the sentencing decision reached by Judge Johnstone is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

Finally, Folsom argues that the sentencing court abused its discretion in failing to refer his case to the three-judge sentencing panel pursuant to AS 12.55.165. Folsom proposes three unlisted mitigating factors as grounds for referral: (1) his right to rehabilitation under Article 1, section 12 of the Alaska Constitution; (2) the societal interest in preserving his family unit; and (3) the fact that, had he been treated under the provisions of the Youth Corrections Act (former 18 U.S.C. 5005 *et seq.*), his first conviction (a 1976 federal drug conviction) would have been set aside, and he would not have been subject to sentencing as a second-felony offender.

None of these proposed unlisted mitigating factors are meritorious. First, given the sentencing court's ability to adjust the presumptive sentence in light of the three mitigating factors that Folsom properly established, the court had ample opportunity to consider Folsom's constitutional right to rehabilitation in formulating his sentence. *See Smith v. State*, 711 P.2d 561, 572 n. 8 (Alaska 1985). Second, although Folsom suggests that his family circumstances warranted referral to the three-judge panel, the record indicates little unique or compelling about Folsom's circumstances. The fact that Folsom was married and had a family is in itself insufficient to require referral. Third, the possibility that Folsom might not have been subject to sentencing as a second-felony offender had he been sentenced under the Youth Corrections Act for his original conviction is academic, particularly in light of the federal court's express determination, in imposing the original judgment, that Folsom was not amenable to treatment as a youthful offender. We conclude that the sentencing court did not err in failing to refer Folsom's case to the three-judge panel.

The conviction and sentence are AFFIRMED.