**James GREINER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1036.**

Court of Appeals of Alaska.

Aug. 21, 1987.

Sidney K. Billingslea, Asst. Public Defender, Kenai, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

James Greiner was convicted, following a jury trial, of two counts of misconduct involving a controlled substance in the second degree. AS 11.71.020(a). Greiner was charged with selling heroin to undercover officer Wilbur E. Hooks on August 22, 1984, and September 6, 1984. Greiner appeals his convictions raising several issues. We conclude that the trial court did not err in finding that Greiner failed to establish the defense of entrapment. However, we conclude that the trial court erred in allowing the counts which involved Greiner to be joined with counts involving other defendants. We accordingly reverse Greiner's convictions.

## JOINDER

Greiner was indicted on two counts of a four-count indictment along with three other defendants, Darrel D. Frazier, Lamar Merrill, and Judy Alexander. Count I of the indictment charged Frazier and Greiner with delivering approximately one-half gram of heroin to Officer Hooks on or about the 22nd day of August, 1984. Count II charged Frazier, Merrill, and Alexander with delivering approximately one gram of heroin to Officer Hooks on or about the 23rd day of August, 1984. Count III charged Frazier with delivering approximately two grams of cocaine to Officer Hooks on or about the 30th day of August, 1984.[1] Count IV charged Greiner with delivering approximately one-eighth of a gram of heroin to Officer Hooks on or about the 6th day of September, 1984.

Greiner sought to sever his trial on Counts I and IV from that of his codefendants on Counts II and III, in which he was not charged. Greiner based his motion to sever on Alaska Rule of Criminal Procedure 8(b), which provides in relevant part:

---

1. James Greiner was apparently present during    this transaction but was not charged.

*Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

Superior Court Judge Eben H. Lewis denied Greiner's motion.

■ Alaska Rule of Criminal Procedure 8(b) is essentially identical to Federal Rule of Criminal Procedure 8(b). Consequently, we have turned to the federal cases and authorities interpreting Federal Rule 8(b) to interpret the Alaska rule. In general, the interpretations of Federal Criminal Rule 8(b) do not permit joinder of codefendants who are charged with similar but unrelated acts. *See* 8 *Moore's Federal Practice* § 8.06[2] (2d ed. 1987); 1 C. Wright, *Federal Practice and Procedure* § 144, at 494–514 (2d ed. 1982); *United States v. Velasquez*, 772 F.2d 1348 (7th Cir.1985) *cert. denied,* —— U.S. ——, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986); *United States v. Andrews*, 765 F.2d 1491 (11th Cir.1985) *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986); *United States v. Perry*, 731 F.2d 985 (D.C.Cir.1984); *United States v. Hatcher*, 680 F.2d 438 (6th Cir. 1982). Unless joinder is permitted under Rule 8(b), codefendants may not be tried together. *See, e.g.,* 1 C. Wright, *supra* § 144, at 513.

■ The difficult question under Rule 8(b) is when can defendants be said to have engaged in "the same series of acts or transactions constituting an offense or offenses." Generally, under the federal cases, the unifying factor is a conspiracy charge, although a conspiracy charge is not required. However, it appears that there must be a significant connection between the different acts charged, such as a common scheme or plan or joint venture, in order to permit counts involving different defendants to be joined. We find the following discussion from Wright's *Federal Practice and Procedure* to be helpful:

No matter how similar offenses may be, they may not be joined in a case in which there is more than one defendant unless they can be said to arise out of a series of acts or transactions. Three kinds of situations may arise, but the principle just stated is controlling, and the same result should be reached, in each.

The simplest situation is that in which it is charged that one defendant committed an offense and that a second defendant committed a similar offense, but there is no allegation that the two offenses arose out of a series of transactions in which both defendants participated. Joinder is not permitted. Next is the situation in which two defendants are jointly charged with committing an offense, and there is an unrelated charge that on some other occasion one of the defendants committed a similar offense. Again joinder is not permitted. The final situation can be best presented by an illustration. An indictment against two defendants charges each of them in one count with having transported a stolen automobile from Oklahoma to Colorado, and in a second count charges each of them with having transported a stolen automobile from Colorado to Oregon. Unless the two incidents can be said to have been part of a series of acts or transactions, joinder is not permitted. There must be two trials, although the government has a choice of how to proceed. It may try both of the defendants for the Oklahoma to Colorado trip and in a separate trial try both of them for the Colorado to Oregon trip. Joinder in each case would be proper under Rule 8(b) since each of the defendants had participated in the transaction giving rise to each trial. Alternatively the government could try the first defendant charging both offenses and separately try the second defendant charging both offenses. If it chooses to proceed in that fashion a single defendant would be involved in each case and the joinder as to him of offenses of the same character would be authorized by Rule 8(a). The one thing the government cannot do is try both defendants on both charges in a single trial.

There is good reason why this restriction should apply. As stated by the District of Columbia Circuit:

> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses.

1 C. Wright, *Supra* § 144, at 508–13 (footnotes omitted).

We have reviewed the record in this case and fail to see a sufficient connection between Counts II and III, which do not mention defendant Greiner, and the two counts in which he was charged. Although there was evidence that all the defendants were willing to sell drugs and were well-acquainted and cooperated with each other in individual drug sales, there was no real evidence of a conspiracy, joint venture, or common scheme or plan. Rather, the evidence suggests individuals who, either separately or in combination, made separate drug sales. Under these circumstances, joinder of the offenses was improper. We accordingly reverse Greiner's convictions.

## ENTRAPMENT

Although our ruling on joinder disposes of this case, we must still review Greiner's claim of entrapment. If we found merit to his claim, he would be entitled to a dismissal of Count IV. The following is the factual background necessary for a discussion of the entrapment issue.

### Greiner's Testimony

Greiner testified that Frazier was driving him to work when they saw Wilbur Hooks and Jerry Raygor. Frazier stopped and went over to their car. Greiner stated that he is a heroin addict and knew that Raygor was also a heroin user. When Frazier and Greiner reached Hooks' car, Raygor said that he was sick and asked if they knew where to get heroin. Greiner said that he did, and agreed to go get drugs for Raygor. Hooks, who was paying for the drugs, was afraid to let Greiner leave with his money, so Greiner gave Hooks his personal heroin supply to hold until he returned.

Greiner stated that he was unable to obtain more heroin and returned to Hooks' car. He asked Hooks to return the heroin, but Hooks asked Greiner to sell him the bag that Hooks was holding. Greiner was reluctant because it was his personal supply, but eventually sold Hooks the bag. However, Greiner testified that he never received the money; Hooks handed the money to Frazier. Greiner testified that he sold Hooks the heroin because Raygor was complaining about feeling sick and needing drugs, and that he, as an addict, sympathized with Raygor's problems. Greiner contended that he would not have given up his personal heroin supply if Raygor had not said that he was sick.

### Officer Hooks' Testimony

Officer Hooks testified that he and Raygor were driving when Greiner flagged down Hooks' car. Greiner handed Hooks a bag of heroin to examine. Frazier was present, but did not participate in the transaction.

Hooks told Greiner that he wanted more heroin than was in the bag that Greiner handed him. Greiner took $100 from Hooks to go obtain more heroin while Hooks held the first bag as collateral. Greiner returned without finding more heroin and agreed to sell Hooks the original bag. Hooks testified that Greiner kept the $100 which Hooks had given him and gave Hooks $50 in change. Officer Hooks denied that Raygor said anything about being sick and stated that Raygor did not exhibit any symptoms of drug withdrawal.[2]

Judge Lewis concluded that there was no entrapment. He found that the speed with which Greiner agreed to go get more heroin and the quickness of the sales transac-

---

**2.** Darrel Frazier, relying on his fifth amendment right, did not testify at the entrapment hearing.

tion indicated a willingness on Greiner's part to sell drugs. The court found that Officer Hooks was a more credible witness than Greiner and accepted Hooks' version of the events. Judge Lewis found that he could not find entrapment "even granting Mr. Greiner the benefit of the doubt."

Entrapment is an affirmative defense. Alaska applies an objective standard and the burden is on the defendant to establish by a preponderance of the evidence that the police "induced the defendant to commit the offense by persuasion or inducement as would be effective to persuade an average person, other than one who is ready and willing, to commit the offense." AS 11.81.450; *Grossman v. State*, 457 P.2d 226, 229 (Alaska 1969); *Folsom v. State*, 734 P.2d 1015, 1017 (Alaska App.1987). The issue is for the court, not for the jury, and the trial court's factual findings are to be reversed only if clearly erroneous. 734 P.2d at 1017.

In *Folsom v. State*, 734 P.2d 1016–18, on very similar facts, we concluded that the trial court did not err in rejecting an entrapment defense. In the instant case, Judge Lewis indicated that even under Greiner's version of the facts, Greiner had not established an entrapment defense. For the reasons stated in *Folsom*, we conclude that the trial court did not err in rejecting the entrapment claim even if it accepted Greiner's version of the transaction.[3]

Greiner's conviction is REVERSED and the case is REMANDED to the superior court.

---

**3.** Given our decision that there was no entrapment, even under Greiner's version of the events surrounding Count IV, it follows that Greiner was not prejudiced by his inability to call Jerry Raygor as a witness at the entrapment hearing. We note, however, that the record does not reflect that Greiner made an attempt to call Raygor as a witness at the entrapment hearing.