Richard A. ERICKSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2725.

Court of Appeals of Alaska.

Dec. 13, 1991.

Richard A. Erickson, pro se.

David E. George, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

---

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Marzak was ultimately convicted for a theft offense which was upon his possession of stolen

## OPINION

COATS, Judge.

A grand jury indicted Richard A. Erickson for one count of assault in the second degree and two counts of interference with official proceedings. AS 11.41.210(a)(2); AS 11.56.510(a)(1)(C). The charges arose from a car bombing incident in Anchorage on May 19, 1986. The victim, Andrew Twogood, was seriously injured when a bomb, planted in his car, exploded. After a jury trial, Erickson was acquitted of the two counts of interference with official proceedings, but he was convicted of second-degree assault. Erickson now appeals, claiming various errors. We affirm.

Erickson and Robert Marzak operated an automobile wrecking and salvage business in Fairbanks, Andy's Auto Wrecking, which they leased from Twogood. Twogood also maintained a car rental business on one portion of the property. In addition, Twogood owned and operated ABC Auto Recycling in Anchorage.

Erickson and Marzak were engaged in ongoing business disputes with Twogood over rent and other lease terms. Erickson had filed a civil suit against Twogood to resolve some of these matters. Meanwhile, Twogood had discovered that Marzak was operating a "chop shop" on the premises, a business that stripped stolen vehicles for parts.

Twogood went to the police about the stolen vehicles. Based on Twogood's testimony, Investigator Frank Coletta obtained a search warrant for the salvage yard.[1] During the execution of the warrant on May 12, 1986, Erickson was "hot, angry, [and] violent" when he spoke to Twogood on the phone. He demanded to know why Twogood had called the police.

Four days later, Twogood attempted to remove his rental vehicles from the Fairbanks yard. Erickson refused to let him take the vehicles.

vehicles and parts. *See Marzak v. State,* 796 P.2d 1374, 1375 (Alaska App.1990).

On May 19, 1986, Twogood went to work at his Anchorage business. At approximately 1:00 p.m., Twogood and one of his employees, Fred Neubauer, went to run an errand in Twogood's car. Entering first, Twogood got into the driver's seat. Before Twogood could open the passenger door for Neubauer, the car exploded.

As a result of the explosion, Twogood is permanently blind, his eardrums are severely damaged, he has lost parts of his fingers, and his body is burned. Neubauer has shrapnel remaining in his body, and has permanently lost some function in his arm.

Erickson claimed that he first learned of the car bombing from an Anchorage Daily News reporter, who called him that afternoon. Erickson then contacted the police. He told Investigator Coletta that he had lent his truck to Marzak, who had wanted to send two men, Darren Taylor and Robert Machado, to Anchorage to beat up Twogood to teach Twogood a lesson because of the search warrant incident. He claimed that he was unaware of a plan to murder Twogood; he thought Marzak was only planning to "rough him up." However, Erickson also indicated that Marzak might have mentioned the possibility of a "hit and run deal" and that Marzak had referred to "hit and run" as a method of killing someone in the past.

Erickson offered to cooperate with the police. He gave them his truck to investigate for fingerprints or other evidence. He also wore an electronic wire during a conversation with Marzak, in which Marzak made incriminating statements. The police then wanted Erickson to arrange and record a meeting between himself and the other three men involved in the incident (Marzak, Machado, and Taylor), but Erickson refused to do so.

The police spoke to Machado on March 23, 1987. Machado agreed to cooperate with the police in exchange for immunity. Machado then recorded conversations with Marzak and Taylor. When confronted with the contents of these conversations, Marzak and Taylor confessed to their roles in the attempted murder of Twogood. According to Taylor, Machado knowingly aided Taylor in the plan to bomb Twogood's car and therefore had lied about his role in violation of the immunity agreement. According to Marzak, Erickson initiated the plan to murder Twogood. *See Machado v. State*, 797 P.2d 677, 679–80 (Alaska App. 1990).

Taylor and Marzak entered plea agreements with the state, and agreed to testify against Erickson and Machado. Marzak pled no contest to charges of solicitation of murder, attempted murder, and first-degree assault. Taylor pled no contest to attempted murder and first-degree assault. Both Marzak and Taylor received sentences of forty years in prison.

Machado pled not guilty to charges of attempted first-degree murder, assault in the first degree, arson in the first degree, criminal possession of explosives, and perjury; Erickson pled not guilty to second-degree assault and two counts of interference with official proceedings. The charges against Machado and Erickson were joined for trial.

The joint trial began on May 31, 1988, in front of Superior Court Judge Karl S. Johnstone. Marzak testified that Erickson initially approached him to arrange to have Twogood murdered. Marzak contacted Taylor and told Erickson that "it was going to be a hit and run."

It was undisputed at trial that Erickson never spoke to Taylor about the plans to murder Twogood. Taylor testified that he and Machado drove to Anchorage, in Erickson's truck, on May 16, 1986. On May 19, Taylor placed the bomb in Twogood's car.

Erickson testified in his own defense. He stated that his business relationship with Marzak had deteriorated over Marzak's illegal activities—drug dealing and stripping stolen cars. He also testified that he did not know of the plan to kill Twogood; he lent his truck to Marzak with the belief that Marzak planned to have Twogood beaten up. At the end of the trial, the jury convicted Erickson of assault in the second degree, a class B felony with a maximum sentence of ten years' imprisonment.

Judge Johnstone sentenced Erickson to ten years with one year suspended, restricting Erickson's eligibility for parole. He also placed Erickson on five years' probation following his release from confinement. This appeal followed.

Erickson initially contends that the state presented insufficient evidence at trial to justify his conviction. Specifically, he argues that the state presented insufficient evidence to corroborate Marzak's testimony. Because Marzak was an accomplice, under AS 12.45.020 the state was required to corroborate his testimony "by other evidence that tends to connect the defendant with the commission of the crime." In *Silvernail v. State*, 777 P.2d 1169, 1172 (Alaska App.1989), we discussed the corroboration requirement as follows:

> Corroborative evidence is not sufficient if it "merely shows the commission of the crime or the circumstances of the commission." [AS 12.45.020.] To be sufficient, however, corroborating evidence need not independently establish the accused's guilt. *Brown v. State*, 693 P.2d 324, 329 (Alaska App.1984). It need only induce "a rational belief that the accomplice was speaking the truth...." *Oxenberg v. State*, 362 P.2d 893, 897 (Alaska 1961). *Accord Brown v. State*, 693 P.2d at 329.

> In determining the sufficiency of the evidence, the totality of the evidence at trial must be considered. *Martin v. Fairbanks*, 456 P.2d 462, 464 (Alaska 1969). The evidence, and all of the reasonable inferences arising therefrom, must be viewed in the light most favorable to the state. *Brown v. State*, 693 P.2d at 328. The evidence, when so viewed, will be deemed sufficient if reasonable jurors could conclude that the accused's guilt has been established beyond a reasonable doubt. *Id.; Cole v. State*, 754 P.2d 752, 755 (Alaska App. 1988).

■ In the instant case, the state presented sufficient evidence to corroborate Marzak's testimony. Both Twogood and Investigator Coletta testified that Erickson was extremely angry when the police executed the warrant for the stolen cars on May 12, 1986. The bombing occurred on May 19, 1986. This testimony corroborated Marzak's testimony concerning Erickson's motive for participating in the assault on Twogood. In addition, Coletta testified that Erickson told him:

> that he'd loaned his truck to Robert Marzak for the specific purpose of two men that Marzak knew ... as Darren and Bob to drive that truck to Anchorage because it was street legal ... and that these two men were going to go to Anchorage and the words he used were "fuck up Andy Twogood."

According to Coletta, Erickson stated that he knew Taylor had a drug debt which Marzak would forgive after Taylor and Machado finished with Twogood. Erickson stated that Marzak told him this information before Erickson loaned the truck. Erickson also told Coletta that he provided Marzak with Twogood's address in Anchorage. Erickson indicated that he was aware that Marzak had access to explosives and that Marzak had threatened a "hit and run deal" when angry at someone in the past. We conclude that this evidence was legally sufficient to induce a rational jury to conclude that Marzak was telling the truth about Erickson's involvement in the crime.

Erickson next contends that there was insufficient evidence to convict him under an accomplice liability theory. He claims that loaning his truck to Marzak was not sufficient to satisfy the *actus reus* requirement of *Hensel v. State*, 604 P.2d 222, 238 (Alaska 1979). He further argues that the state must show an accomplice's specific intent to promote particular criminal conduct and that the evidence in this case did not establish his specific intent. Finally, he argues that an error in the court's jury instruction on accomplice liability diluted the *mens rea* requirement and allowed the jury to convict on insufficient evidence.

■ Erickson first argues that the mere act of loaning his truck to Marzak was insufficient to satisfy the *actus reus* requirement for accomplice liability. This argument is unpersuasive. In the case relied upon by Erickson, *Hensel*, the court held

that an act of assistance by an accomplice does not need to be, in and of itself, criminal. Any act which "helps or facilitates the commission of the substantive crime" is sufficient, even if the act is "remote in both time and space from the criminal conduct." *Id.* at 238 & n. 66. Erickson's act of loaning his truck to Marzak promoted or facilitated the commission of the offense; he provided the necessary vehicle so that Taylor and Machado could drive to Anchorage and carry out the plan to either seriously assault or murder Twogood.

Erickson next argues that the state presented insufficient evidence to establish his specific intent to bomb Twogood. The state responds that the evidence was sufficient to show that Erickson acted recklessly in causing serious physical injury to Twogood.

 In *Echols v. State*, 818 P.2d 691 (Alaska App.1991), we concluded that a defendant can be convicted as an accomplice under AS 11.16.110 only if the defendant intended to promote or facilitate the commission of the specific offense. We pointed out that "the statute requires the accomplice to act *'with intent* to promote or facilitate the commission of the *offense'* (emphasis supplied)." *Id.* at 692 (quoting AS 11.16.110(2)). However, in that case, the state charged Echols only under AS 11.16.110. Here, the state charged that Erickson "did unlawfully and recklessly cause serious physical injury to Andrew Twogood." In the indictment, the state cited both the statute for assault in the second degree and AS 11.16.110.[2] We believe that a fair reading of the indictment is that Erickson was charged both as an accomplice under AS 11.16.110(2)(B) and as a principal under AS 11.41.210(a)(2). We have reviewed the arguments at trial and the court's jury instructions. It appears that the jury could properly have convicted Erickson either as an accomplice or as a principal, and that the court's instructions were proper.

 As far as accomplice liability under AS 11.16.110, the court instructed the jury in part as follows:

A person is legally accountable for the conduct of another person constituting an offense if, with intent to promote or facilitate the commission of the offense, the person aids or abets the other person in planning or committing the offense.

In order to establish that Richard Erickson is legally accountable in this case, the state must prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Anchorage and on or about May 19, 1986;

*Second, that the defendant acted with intent to promote or facilitate the commission of an offense;* and

Third, that the defendant aided or abetted another person in planning or committing the offense.

(Emphasis supplied.) Erickson argues that, because AS 11.16.110(2)(B) states that a defendant must intend "to promote or facilitate the commission of *the* offense," the court erred by instructing the jury that Erickson had to intend to promote or facilitate the commission of *an* offense.

The plain language of AS 11.16.110(2)(B) does seem to indicate that an accomplice must intend the commission of the particular offense committed by the principal in order to be convicted of the offense. *Echols*, 818 P.2d at 692. However, Erickson never objected to this deficiency in the instruction at trial. Furthermore, the first part of the instruction clearly states that the accomplice must act "with intent to promote or facilitate the commission of *the* offense." Given this fact, it seems unlikely that the jury would misinterpret the instruction, and Erickson's claim does not rise to the level of plain error.

In addition to instructing the jury on accomplice liability under AS 11.16.110, the court also instructed the jury as follows:

A person commits the crime of Assault in the Second Degree if the person reck-

---

**2.** The state actually cited AS 11.16.100(2)(B) in the indictment. However, in context, it is obvious that the state intended to cite AS 11.16.-110(2)(B), and Erickson has not argued that this was error or that he was misled.

lessly causes serious physical injury to another person.

In order to establish the crime of Assault in the Second Degree, it is necessary for the state to prove beyond a reasonable doubt the following:

First, that the event in question occurred at or near Anchorage and on or about May 19, 1986;

Second, that Richard Erickson acted recklessly and;

Third, that the defendant caused serious physical injury to Andrew Twogood.

Under this instruction, which charged Erickson as a principal, the jury would only have to find that Erickson acted recklessly, and not that he "acted with intent to promote or facilitate the commission of the offense." However, to convict Erickson as a principal, the jury would also have to find that he *caused* serious physical injury to Andrew Twogood. In order to convict Erickson as an accomplice, the jury did not have to find that Erickson's conduct was the proximate cause of Twogood's injuries.

In conclusion, we hold that the indictment charged Erickson both as an accomplice and as a principal, that the state presented sufficient evidence for the jury to consider Erickson's guilt under both theories, and that the jury instructions on these two theories were sufficient under the plain error rules.

■ Erickson was charged with assault in the second degree. At Erickson's request, the court also instructed the jury on the lesser-included offenses of third- and fourth-degree assault. In closing argument, the prosecutor urged the jury to convict Erickson of second-degree assault, arguing that the less serious charges were inappropriate for this offense:

To find him guilty of assault in the fourth degree you have got to find objectively that Andy Twogood only suffered physical injury, and I think that's an insult....

. . . .

The fact is under the law that to find a lesser included you would have to find that the injury that Andy Twogood sustained was not serious, and you know

from the moment that he walked into this courtroom that that's a ludicrous proposition.

: . . .

... And I apologize for any emotion in my voice at considering that what happened to Andy Twogood was only physical injury instead of serious physical injury, because to find one of those lessers that's what you have to find, that objectively under the definition that the Judge is going to tell you, that what happened to Andy Twogood was only physical injury and not serious physical injury.

Erickson contends that the prosecutor misstated the law to the jury. He argues that she led the jury to believe that it could not convict Erickson of the lesser-included offenses, regardless of his culpable mental state, because Twogood had obviously suffered serious physical injury.

The trial court correctly instructed the jury on the elements of the lesser-included offenses. We have read the arguments of counsel. In context, we fail to see how the state's argument would have misled the jury. We find no error.

Erickson next contends that Judge Johnstone erred in denying his motion to sever his case from the case against his codefendant, Robert Machado. Erickson argues both improper joinder under Alaska Criminal Rule 8(b) and prejudicial joinder under Alaska Criminal Rule 14.

Rule 8(b) permits two or more defendants to be joined in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Erickson argues that his case was improperly joined with Machado's because several counts against Machado—perjury, possession of explosives, and arson—did not relate to the charges against Erickson. The perjury counts allege that Machado lied at a search warrant hearing, a year after the bombing incident, concerning his knowledge of and involvement with the explosives and bomb which injured Twogood and Neubauer. The other charges against Machado alleged

his actual participation in the bombing incident. Since there was no evidence at trial to prove that Erickson knew in advance of a plan to use explosives to injure Twogood, Erickson argues that all charges concerning the use of the car bomb were improperly joined with his case.

To be charged in a single indictment, it is not necessary that each defendant participate in each act. *Larson v. State,* 566 P.2d 1019, 1021 (Alaska 1977). However, the defendants' offenses will only constitute a series of acts or transactions under Rule 8(b) if there is "a significant connection between the different acts charged." *Greiner v. State,* 741 P.2d 662, 664 (Alaska App.1987). In *Greiner,* this court found that joinder was improper because there was no evidence of a common scheme or plan among the four defendants. *Id.* at 665. In *Mathis v. State,* 778 P.2d 1161, 1167 (Alaska App.1989), this court found that joinder was proper under Rule 8(b) because there was "an identity of participants" in a single plan to murder the victim.

According to the state's evidence, a common scheme or plan did exist in this case; Machado and Erickson played separate roles in that single plan. The state charged Erickson with initiating the plan to murder Twogood. The evidence at trial indicated that Erickson approached Marzak to arrange the murder, that he lent his truck to Taylor and Machado to drive to Anchorage to carry out those arrangements, and that he at least knew of the plan to assault Twogood. All the charges against Machado related to that attempt on Twogood's life, including the perjury charges. Machado's acts bear a significant connection to Erickson's involvement in the plan to murder Twogood. Therefore, Judge Johnstone could find that the state properly joined the charges for trial.

Alaska Rule of Criminal Procedure 14 provides, in pertinent part:

If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires.

An appellate court should overturn a trial judge's decision to deny severance only where the trial court has abused its discretion. We are to find an abuse of discretion only where the defendant has shown prejudice from joinder. *Abdulbaqui v. State,* 728 P.2d 1211, 1219 (Alaska App. 1986). Erickson first claims that he was prejudiced by joinder because he was unable to call Machado as a witness.

In *Hawley v. State,* 614 P.2d 1349 (Alaska 1980), the defendant wanted to sever the trials so that he could call the codefendant on his behalf. Finding that, even if the codefendant was willing to testify, it was not clear that her testimony would have been more than minimally significant, the supreme court held that the trial court did not abuse its discretion in denying the defendant's severance motion. *Id.* at 1360.

Similarly, in this case, Erickson has failed to show that Machado was willing to testify or that Machado's testimony would have been significantly exculpatory. In *Hawley,* the defendant submitted an affidavit from the codefendant about her willingness to testify; there was no such indication of Machado's willingness to testify in this case. Additionally, there is little in the record to indicate that Machado's testimony would have been helpful. Machado's recorded statement merely indicates his lack of knowledge about Erickson's involvement.

Erickson also argues that he was prejudiced because Machado did not testify but the state presented Machado's statements into evidence. Erickson relies on *Newcomb v. State,* 779 P.2d 1240, 1242–43 (Alaska App.1989). In that case, the state admitted into evidence the confession of a non-testifying codefendant. The codefendant's statements directly implicated Newcomb as an accomplice in the offense. We reversed Newcomb's conviction because the statements were clearly inculpatory of Newcomb and Newcomb was never able to

cross-examine the codefendant. In contrast, Erickson has failed to show that Machado's statements prejudiced him. Machado never stated that Erickson was involved in the attempted murder. Specifically, in response to Investigator Coletta's suggestion that Erickson might be involved, Machado denied knowing anything about Erickson's role. We find that Judge Johnstone did not abuse his discretion in concluding that Erickson did not show prejudice from being jointly tried with Machado.

Erickson next contends that Judge Johnstone erred in denying his motion to enforce an alleged immunity agreement with the state. Prior to trial, Erickson filed a "Motion to Impose Implied Immunity Agreement," in which he requested the court to enforce an implied promise of immunity which Erickson claimed Investigator Coletta gave him in exchange for his cooperation in the police investigation. Alternatively, Erickson moved to suppress his statements to the police because they were made as a result of duress and coercion. Erickson claimed that the actions which the police took to encourage him to cooperate made his statements involuntary.

Following an extensive evidentiary hearing, Judge Johnstone denied Erickson's motion, ruling that the state had not made any express or implied promises of immunity. Judge Johnstone never explicitly ruled on Erickson's alternative motion to suppress his statements to the police as involuntary.

 Judge Johnstone's findings that the state did not expressly or impliedly promise immunity are supported by the record. In reviewing the judge's decision, we review the facts in the light most favorable to the state, the prevailing party. *Wilburn v. State*, 816 P.2d 907, 911 (Alaska App.1991). According to the evidence which the state presented, Erickson voluntarily approached Investigator Coletta to draw suspicion away from himself. Judge Johnstone found that Coletta never made any promises of immunity or implied that he could give Erickson immunity. The state's position was that if Erickson was being truthful, he did not need immunity.

By finding that the state had not expressly or impliedly offered Erickson immunity, Judge Johnstone implicitly found that Erickson's statements to the police were voluntary. Although Erickson contends that Judge Johnstone did not make sufficient findings on this issue, in order to properly preserve this issue for appeal, it was Erickson's duty to insist that the trial court rule on his motion. *Jonas v. State*, 773 P.2d 960, 963 (Alaska App.1989). We conclude that there was sufficient evidence to support Judge Johnstone's implied finding that Erickson's statements were voluntary.

Erickson next contends that Judge Johnstone erred in denying his motion for a mistrial. During Marzak's testimony, the prosecutor brought out that during a taped conversation, when Taylor asked Marzak whether Erickson could have been involved in an unrelated homicide, Marzak replied that he had no reason to believe that Erickson was involved. This testimony came in without objection. Later, during closing argument, the prosecutor referred to this testimony. She pointed out that Marzak could have falsely tried to implicate Erickson in the unrelated homicide, but did not. From this she argued that Marzak was not willing to falsely accuse Erickson, and consequently was telling the truth when he stated that Erickson was involved in a plan to kill Twogood.

Erickson's counsel objected to this argument on the ground that it was not supported by the evidence. Judge Johnstone overruled this objection. Following the conclusion of the prosecutor's argument, Erickson moved for a mistrial. Judge Johnstone denied this motion.

 A trial court is vested with wide discretion in determining whether to grant a mistrial; the decision will be overturned only if it is clearly erroneous. *Roth v. State*, 626 P.2d 583, 585 (Alaska App. 1981). In the instant case, Marzak's testimony came in without any objection. The prosecutor was therefore entitled to argue the weight of this testimony. We believe that Judge Johnstone could properly conclude that the testimony and argument

were not unduly prejudicial. The clear point of the testimony was that Erickson was not involved in the unrelated homicide. We find no error.

Erickson next contends that Superior Court Judge Peter A. Michalski abused his discretion in denying Erickson's motion for a new trial which was based on an alleged improper contact between Judge Johnstone and one of the jurors. Judge Michalski heard testimony from several witnesses including Judge Johnstone and the juror. Judge Michalski concluded that there had been no improper contact or communication between Judge Johnstone and the juror. Judge Michalski's findings are supported by the record and are not clearly erroneous. We conclude that Judge Michalski did not err in denying Erickson's motion for a new trial.

■■■ Erickson contends that Judge Johnstone erred in increasing Erickson's bail during trial. He claims that being remanded to custody denied him an opportunity for a fair trial. However, nothing in the record reflects that Erickson was prejudiced by the fact that he was incarcerated during part of the trial. We find no error.

■■■ Erickson next raises several issues concerning his sentence. Erickson was convicted of assault in the second degree, a class B felony with a maximum sentence of ten years of imprisonment. AS 11.41.-210(b); AS 12.55.125(d). A second felony offender convicted of a class B felony is subject to a presumptive sentence of four years; a third felony offender faces a presumptive sentence of six years. Erickson is a first felony offender for purposes of presumptive sentencing. Judge Johnstone sentenced Erickson to ten years with one year suspended. He also ordered that Erickson was not to be released on parole.

Erickson argues that Judge Johnstone was improperly influenced by talking with Twogood *ex parte.* However, there is nothing in the record to suggest that Judge Johnstone and Twogood had an improper *ex parte* conversation. Twogood made a lengthy oral statement at the sentencing hearing, with no objection from Erickson. In addition, the presentence report, the tri-

al, and other sources gave Judge Johnstone extensive information about Twogood.

Erickson argues that Judge Johnstone put undue emphasis on Erickson's prior felony conviction. Erickson had previously been convicted of bank robbery when he was seventeen years old and sentenced to four years of imprisonment. This conviction was later set aside, following Erickson's discharge from parole. Judge Johnstone could properly consider this prior offense in evaluating Erickson's background and prospects for rehabilitation. There is no indication that Judge Johnstone placed undue emphasis on this prior offense. We find no error.

■■■ Erickson argues that Judge Johnstone erred in requiring him to submit to a psychiatric evaluation within ninety days of his release from prison. However, we believe that Judge Johnstone could properly find that Erickson was a dangerous offender and that the examination might help probation officials plan for Erickson's supervision following his release from confinement. It appears that the condition is reasonably related to the protection of the public and is not unduly restrictive of Erickson's liberty. *Roman v. State,* 570 P.2d 1235, 1240 (Alaska 1977).

■■■ Erickson argues that Judge Johnstone erred in requiring as a condition of probation that Erickson not reside in the same community as Twogood and Neubauer and their families. The state agrees that Judge Johnstone's oral condition is too broad, but points out that in the judgment, the court merely requires Erickson to have "no contact, direct or indirect, with either of the victims or any member of their families." We agree that this condition is proper. As amended in the judgment, the condition is consistent with *Roman.*

■■■ Erickson next argues that Judge Johnstone erred in failing to hold a hearing on Erickson's ability to pay restitution. *See Karr v. State,* 686 P.2d 1192, 1196–97 (Alaska 1984). The state agrees that Judge Johnstone erred in requiring Erickson to apply one-half of his future earnings

to restitution upon his release from prison. The state's concession is consistent with the *Karr* case. We accordingly vacate condition No. 2, which requires Erickson to contribute all of his earnings while in custody and fifty percent of his earnings while he is on probation. We remand for further proceedings in light of *Karr*.

 Erickson next argues that his sentence is excessive. However, Judge Johnstone stated at sentencing that he believed the testimony of Marzak that Erickson initiated the plan to kill Twogood, with the full understanding that Twogood would be killed or seriously injured. Essentially, Judge Johnstone found that Erickson was actually guilty of a much more serious offense than the offense for which he was convicted—the attempted murder of Andrew Twogood. He found that Erickson was an extremely dangerous offender who needed to be isolated to protect the public.

Judge Johnstone was able to see all the evidence presented at trial in this case. His factual findings concerning the seriousness of the offense are entitled to substantial deference. Given his conclusion that Erickson's conduct actually amounted to a more serious offense than the offense for which he was convicted, we believe that the sentence of ten years with one year suspended, with Erickson ineligible for parole release, was not clearly mistaken.

The conviction is AFFIRMED. The sentence is AFFIRMED in part and REMANDED.

MANNHEIMER, J., not participating.