**Jacalyn BACHLET, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5823.**

Court of Appeals of Alaska.

June 13, 1997.

Rex Lamont Butler and Linda S. Thomas, Rex Lamont Butler and Associates, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., MANNHEIMER, J., and JOANNIDES, District Judge.*

*OPINION*

COATS, Chief Judge.

Jacalyn Bachlet was convicted, following a jury trial, of two counts of receiving a bribe, a class B felony, one count of misconduct involving a controlled substance in the sixth degree (possession of less than one half pound of marijuana), a class B misdemeanor, and three counts of solicitation to engage in the crime of delivering controlled substances, a class A misdemeanor. AS 11.56.110(a)(2); AS 11.71.060; AS 11.31.110(a) and AS 11.71.040(a)(2). Superi-

or Court Judge Mark C. Rowland sentenced Bachlet to a five-year suspended imposition of sentence on the bribery convictions. Judge Rowland required Bachlet to serve a term of imprisonment of six months as a condition of probation. He imposed shorter concurrent sentences on the marijuana offenses. Bachlet appeals her convictions. We affirm.

In October of 1993, Jacalyn Bachlet, an assistant public defender in the Public Defender's office in Palmer, was appointed to represent Phillip Carter. Carter had been charged with several marijuana offenses and one possession of cocaine offense.

Carter testified that he met with Bachlet at various times between January and April of 1994 to discuss his case. He testified that Bachlet told him that the Public Defender Agency did not allot her enough time to work on individual cases, but she thought that Carter's case was a special case and she could put more time into it if Carter did some things for her. Carter testified that he gave Bachlet small amounts of marijuana, which Bachlet referred to as "fuel for the case." He further testified that he took her out for expensive dinners, bought her champagne, and provided her with other meals. During Bachlet's regularly scheduled vacation, he paid for an overnight trip to Chena Hot Springs. Carter contends that the purpose of this trip was for Bachlet to get away from the office and enable her to work on the suppression motion that she planned to file in his case. Bachlet's account of the Chena Hot Springs trip was different. Bachlet asserts that she was "hooked on Carter," that she "wanted" him, that she thought that he was in love with her, and that she thought the trip was so that they could spend time together. Carter and Bachlet had a consensual sexual relationship during this trip.

Carter testified that Bachlet told him that she thought that she should get a little "extra compensation" for putting more time into his case. When Carter asked her what she meant, she responded that she wanted to have a little cabin next to a river or a lake. Carter agreed that he would build her a

*Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

cabin if she was successful in having the charges against him dismissed, and if she supplied the land and materials. Carter testified that Bachlet repeatedly told him that "there's no justice in the court system unless you have money to pay for it." Carter testified that Bachlet scared him into giving her whatever she wanted, because he was willing to give her what she wanted "to get justice."

Bachlet filed a motion to suppress evidence in Carter's case, which was denied by the trial court. Ultimately, Carter plead no contest to one felony count of possession of marijuana, reserving the right to appeal the trial court's denial of the motion to suppress under *Cooksey.*[1]

In April of 1994 Carter met with a probation officer who was assigned to write the presentence report in his case. Carter told the probation officer of his relationship with Bachlet. As a result of this disclosure, the Public Defender Agency placed Bachlet on temporary leave in mid-April of 1994 and conducted an investigation.

Carter testified that after she was placed on leave Bachlet then began calling him and leaving messages on his answering machine. Carter stated that Bachlet wanted him to cooperate with her and also threatened him. Carter contacted the District Attorney's Office, which referred Carter to the Alaska State Troopers. Carter gave the troopers the tape from his answering machine. He agreed to work with the troopers to corroborate his story, and the troopers agreed to give Carter immunity from prosecution limited to drug transactions with Bachlet.

On April 26, 1994, the troopers obtained a *Glass*[2] warrant which authorized the troopers to monitor and record person-to-person and telephone conversations between Carter and Bachlet. In several recorded conversations which followed, Carter obtained statements from Bachlet which corroborated his story. During these conversations Bachlet told Carter that "maybe the fair thing ... for you to do is to help me make some

money." Carter suggested that he could help Bachlet set up a marijuana-growing operation. Bachlet told Carter that she wanted three and one-half ounces of marijuana. Carter agreed to get the marijuana. After Carter left Bachlet, he met with the troopers, who suggested offering Bachlet twelve pounds of marijuana instead of helping her to start up the marijuana-grow operation. Carter returned and made this offer to Bachlet. Bachlet answered that she did not want the twelve pounds of marijuana, but wanted the three and one-half ounces. They went on to discuss having Carter set her up with a marijuana-growing business. Bachlet also wanted Carter to immediately loan her $5,000. Carter agreed to loan her the money and bring back the three and one-half ounces of marijuana. Carter then agreed to meet Bachlet later at a different location. Carter left, and obtained approximately five ounces of marijuana from the troopers. Carter gave the marijuana to Bachlet telling her that the bag contained four ounces. After Bachlet drove away from the meeting, the troopers stopped and arrested her. Bachlet was convicted based upon this evidence.

Bachlet was convicted of two counts of receiving a bribe in violation of AS 11.56.110(a)(2) which reads as follows:

**Receiving a bribe.** A public servant commits the crime of receiving a bribe if the public servant accepts or agrees to accept a benefit upon an agreement or understanding that the public servant's vote, opinion, judgment, action, decision, or exercise of discretion as a public servant will be influenced.

Bachlet contends that the statute is unconstitutionally overbroad and vague. In *Summers v. Anchorage,* 589 P.2d 863, 866–67 (Alaska 1979), the court succinctly summarized the law in this area:

[W]e isolated three factors which must be considered when determining whether a statute is unconstitutionally vague. First, a statute may not be so imprecisely drawn and overbroad that it "chills" the exercise

---

1. *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). Carter's convictions were ultimately reversed on appeal based on the ground that the state obtained the evidence against him during an illegal

search. *Carter v. State,* 910 P.2d 619 (Alaska App.1996).

2. *State v. Glass,* 583 P.2d 872 (Alaska 1978).

of first amendment rights. The second consideration is that in order to be consistent with notions of fundamental fairness a statute must give adequate notice of the conduct that is prohibited. The final element in an analysis of statutory vagueness is whether the statute's imprecise language encourages arbitrary enforcement by allowing prosecuting authorities undue discretion to determine the scope of its prohibitions.

(Footnotes omitted.)

■ In general, so long as a statute is not specifically aimed at regulating speech, a court will find a statute unconstitutionally vague for overbreadth for restricting first amendment freedoms only when it reaches a "substantial amount of constitutionally protected conduct," or when it "is impermissibly vague in all of its applications." *United States v. Dischner,* 974 F.2d 1502, 1510–11 & n. 5 (9th Cir.1992) (quoting *Hoffman Estates v. Flipside,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)); *see also Kolender v. Lawson,* 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983). "The fact that the statute might reach first amendment activities is not sufficient; the statute must reach a substantial amount of constitutionally protected activity." *Dischner,* 974 F.2d at 1511–12 & n. 7 (quoting *Kolender,* 461 U.S. at 358 n. 8, 103 S.Ct. at 1859 n. 8); *see also Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991) (holding that where first amendment freedoms are not infringed by the statute, a vagueness claim must be evaluated as the statute is applied to the facts of the case). Courts that have reviewed bribery statutes similar to Alaska's have found that the statutes do not violate the overbreadth doctrine. *See Dischner,* 974 F.2d 1502; *United States v. Dansker,* 537 F.2d 40 (3rd Cir.1976); *State v. O'Neill,* 103 Wash.2d 853, 700 P.2d 711 (1985). Bachlet contends that AS 11.56.110(a)(2) is unconstitutionally overbroad because it does not include the element of "corrupt intent." She argues that therefore the outermost boundaries of the statute are indeterminable and that the statute impermissibly prohibits protected conduct including the exercise of the freedoms of speech, assembly, and association.

However, the legislative history of Alaska's bribe receiving statute reveals that the legislature deliberately excluded the word "corruptly" so that the statute would "prohibit without qualification the [receiving] of any benefit with intent to influence official decision making." Commentary to AS 11.56.100 and 110, 1978 Senate Journal Supp. No. 47, at 70 (June 12, 1978). The commentary explains, "[t]he recipient [of the bribe] must have either solicited the bribe or have accepted it, or agreed to accept it, upon an agreement or understanding with the offeror before the public servant has committed bribe receiving." *Id.* at 70. The commentary reveals that the legislature chose not to label the *mens rea* element for this offense as "corrupt intent." Rather, the statute prohibits receiving a benefit *upon an agreement or understanding* that the benefit will influence the public servant's vote, opinion, judgment, action, decision, or exercise of discretion as a public servant. Therefore the statute does have a culpable mental state; that is, the statute requires the public servant to knowingly accept or agree to accept a benefit upon an "agreement or understanding."

■ Alaska is not alone in excluding the term "corrupt" from its bribery statute. The Model Penal Code Commentary explains that the Code "abandons the usual focus upon 'corrupt' agreements or a 'corrupt' intent and instead spells out with more particularity the kinds of arrangements that are prohibited [by the bribery offense]." *See Model Penal Code Commentary* § 240.1 at 1–2 (1980). The commentary points out that some state statutes which follow the traditional definition of bribery still include an element of "corruptness." *See id.* at 6 & n. 2. However, the Model Penal Code position abandoning the word "corrupt" has been followed in the great majority of revised and proposed bribery statutes. *See id.* at 6–9 & n. 10. It therefore appears that there is substantial authority holding that bribery statutes similar to Alaska's are not overbroad. Consistent with this authority we conclude that AS 11.56.110 is not overbroad.

We next turn to Bachlet's argument that AS 11.56.110 is unconstitutionally vague. However, "it is well settled that a statute whose application may be uncertain in marginal cases need not be declared invalid if the offense charged falls squarely within its prohibitions." *Jackson v. State*, 890 P.2d 587, 595 (Alaska App.1995) (quotations and citations omitted); *see also Stock v. State*, 526 P.2d 3, 11–12 (Alaska 1974). Bachlet contends that the statute's unclear culpable mental state, and the terms "public servant," "benefit," and "agreement or understanding" render the statute too vague for the ordinary citizen to comprehend the distinction between criminal and non-criminal conduct. However, a public defender, who is employed by the State of Alaska, falls squarely within the statute's definition of "public servant."[3]

The statute defines "benefit" as:

a present or future gain or advantage to the beneficiary or to a third person pursuant to the desire or consent of the beneficiary.

AS 11.81.900(b)(2). The legislature's commentary explains that the term "benefit" is not limited to economic gain. *See* Commentary to AS 11.56.130, 1978 Senate Journal Supp. No. 47, at 68–69 (June 12, 1978). The commentary to the statute explains that the term "benefit" does not cover legitimate campaign contributions, routine lobbying activities, legislative "log rolling" and election support. *Id.* It seems clear that the benefits which Bachlet agreed to accept—the meals, the marijuana, the trip to Chena Hot Springs, and the promise to build a cabin— fall clearly within the statutory definition of "benefit."

Neither the bribery statutes nor the criminal code defines "agreement or understanding." Therefore, an inquiry into the general understanding of these words is useful. "There are many instances in which the law resorts to the general understanding of the community as the standard of legal result." *Harris v. State*, 457 P.2d 638, 647 (Alaska 1969). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) (citation omitted); *see also Konrad v. State*, 763 P.2d 1369, 1379 (Alaska App.1988) (court looked at ordinary meaning of the term "repeated" to determine whether that term rendered the statute vague). Black's Law Dictionary defines the term "agreement" as follows:

**Agreement.** A coming together of minds; a coming together in opinion or determination; the coming together in accord of two minds on a given proposition. . . .

Black's Law Dictionary 63 (5th ed. 1979). Webster's New World Dictionary defines "understanding" as follows:

**understanding** a specific interpretation or inference; mutual comprehension, as of ideas, intentions, etc.; mutual agreement. . . .

Webster's New World Dictionary 1548 (2d ed. 1980). The ordinary meaning of the phrase "agreement or understanding" seems analogous to "mutual comprehension," or "mutual understanding," and does not seem to present any vagueness problems. *See, e.g., State v. Greco*, 57 Wash.App. 196, 787 P.2d 940, 943 (1990) (finding that a person of ordinary intelligence would conclude that "agreement or understanding," as used in Washington's bribery statutes, means "mutu-

---

**3.** The statutory definition of "public servant," former AS 11.81.900(b)(48), provides:

"public servant" means each of the following, whether compensated or not, but does not include jurors or witnesses:

(A) an officer or employee of the state, a municipality or other political subdivision of the state, or a governmental instrumentality of the state, including legislators, members of the judiciary, and peace officers[.]

The legislative history accompanying this term reveals that:

The term "public servant" is defined broadly to include not only every category of government

or public officer, but every employee of every such office or agency, [and] every person retained to perform some government service. . . . The definition has been drafted to make it clear that those serving "political subdivisions" and "governmental instrumentalities" within the state are public servants. . . . The gist of the [bribery offenses] is the intent to influence the course of public administration. Commentary to AS 11.81.900(b)(47), 1978 Senate Journal Supp. No. 47, at 69–70 (June 12, 1978).

al agreement"). Once again, Bachlet's conduct in accepting the meals, marijuana, and trip in return for spending extra time on Carter's case, and her agreement with Carter that he would build a cabin for her if she was successful in getting Carter's case dismissed, falls squarely within the ordinary meaning of the phrase "agreement or understanding."

We accordingly conclude that Bachlet's conduct, as charged, fell within the "core conduct" prohibited by the statute. The statute clearly provided Bachlet with notice that this conduct was unlawful. Therefore, we conclude that the statute was not unconstitutionally vague for failure to provide Bachlet notice of the prohibited conduct.

We now turn to Bachlet's argument that the statute is unconstitutionally vague because the statute's imprecise language would encourage arbitrary enforcement by prosecuting authorities. Bachlet's contentions can be disposed of summarily. A defendant making such a claim has the burden to establish that a statute has a history of arbitrary or selective enforcement. *See State v. Weaver*, 736 P.2d 781, 783 (Alaska App.1987); *see also Levshakoff v. State*, 565 P.2d 504, 507 (Alaska 1977); *Summers*, 589 P.2d at 868. Bachlet has not shown that AS 11.56.110 has a history of arbitrary or selective enforcement. We therefore reject Bachlet's argument.

Bachlet contends that Judge Rowland erred in failing to instruct the jury that in order to convict Bachlet of bribery the jury had to find that Bachlet acted with "corrupt intent." However, as we have previously stated, the crime of receiving a bribe under AS 11.56.110(a)(2) does not require the state to prove that the public servant acted corruptly. Under the court's instructions the jury had to find that Bachlet knowingly accepted or agreed to accept a benefit upon the agreement or understanding that her opinion, judgment, action, decision, or exercise of

discretion as a public servant would be influenced by the benefit. These instructions were sufficient to explain the elements of the offense to the jury.[4]

Bachlet next contends that the trial court erred in failing to dismiss the charges against her based on a defense of entrapment. Alaska has an objective approach for determining whether entrapment has occurred. *Grossman v. State*, 457 P.2d 226, 229 (Alaska 1969). The trial court engages in a two-part inquiry:[5] (1) whether the police engaged in activities which were calculated to seduce or coerce people, who are not otherwise motivated to commit crimes; and (2) whether the police conduct "falls below an acceptable standard for the fair and honorable administration of justice." *Pascu v. State*, 577 P.2d 1064, 1067 (Alaska 1978). Entrapment is defined in AS 11.81.450:

> In any prosecution for an offense, it is an affirmative defense that, in order to obtain evidence of the commission of an offense, a public law enforcement official or a person working in cooperation with the official induced the defendant to commit the offense by persuasion or inducement as would be effective to persuade an average person, other than one who is ready and willing, to commit the offense. Inducement or persuasion which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit does not constitute entrapment.

Because this statute defines entrapment as an affirmative defense, Bachlet bore the burden of establishing entrapment by a preponderance of the evidence. AS 11.81.900(b)(1). Put another way:

> In order to prevail on [the entrapment] defense, [the defendant is] required to prove that the police employed fundamentally unfair or dishonorable practices calculated to induce someone to commit the crime in question so that he might be arrested and prosecuted for the offense.

---

4. Based upon the previous contentions, Bachlet argues that the evidence against her was insufficient to support the indictment. We reject this argument.

5. Unless the first prong of the test is satisfied, the second step is never reached. *Anchorage v. Flanagan*, 649 P.2d 957 (Alaska App.1982).

And, while [the defendant] did not need to negate a predisposition to engage in similar conduct, [the defendant must show] that the dishonorable police practices were a substantial factor in inducing him to commit the charged offenses—that his commission of the offenses was "the direct result of inducement by law enforcement officials."

*Washington v. State,* 755 P.2d 401 (Alaska App.1988) (citations omitted) (quoting *Anchorage v. Flanagan,* 649 P.2d 957, 961–62 (Alaska App.1982)). Because entrapment has an objective test, the court looks beyond the immediate parties to the transaction and asks whether the police conduct would be likely to seduce others or coerce others ("average people") into criminal behavior that they would not otherwise commit. *Id.* In judging what effect the officer's conduct would have on an average person, the court should consider the transactions leading up to the offense, the interaction between the officer and the defendant, and the defendant's response to the inducements of the officer. *Grossman,* 457 P.2d at 230. Establishing entrapment entitles the defendant to a dismissal of the charge. *See Greiner v. State,* 741 P.2d 662, 665 (Alaska App.1987).

Turning to the present case, to establish an entrapment defense, Bachlet was required to establish by a preponderance of the evidence that in order to obtain evidence of Bachlet's offenses, Carter, working in cooperation with the police, induced Bachlet to commit the offenses by persuasion or inducement as would be effective to persuade an average person who was not ready and willing to commit the offense. AS 11.81.450; *see also Folsom v. State,* 734 P.2d 1015 (Alaska App.1987). However, Bachlet cannot show entrapment if the inducement or persuasion would have induced only a person engaged in an habitual course of unlawful conduct for gain or profit. *Id.*

Neither the police conduct, nor Carter's conduct, nor the state's decision to prosecute Bachlet appears to be the type of "fundamentally unfair or dishonorable" conduct that courts require to prove an entrapment defense. Bachlet did not offer any evidence that Carter played on her sympathies or their friendship to persuade her to commit offenses she was otherwise unwilling to engage in. With respect to Count IV, the marijuana possession count, as the state points out, Bachlet asked for the marijuana, and stated that she wanted the marijuana "today." With respect to the charges relating to setting up the marijuana-grow operation, Carter initiated the idea of a grow operation, but it was Bachlet who brought up the idea of Carter helping her make money, and it was Bachlet who insisted that Carter sell the marijuana for her. Carter discussed the idea of setting up a grow operation, but he did not appear to "induce" Bachlet to do anything that she wasn't already prepared to do. Considering that the defendant has the burden of establishing entrapment by a preponderance of the evidence, it does not appear that the government's conduct in this case "falls below an acceptable standard for the fair and honorable administration of justice." *See Pascu,* 577 P.2d at 1067. We accordingly conclude that the trial court did not err in rejecting Bachlet's entrapment defense.

Bachlet next contends that the trial court erred in denying her motion to suppress evidence which the police obtained pursuant to a *Glass* warrant. On April 26, 1994, the state troopers applied for and obtained a *Glass* warrant, which authorized the police to record face-to-face and telephonic conversations between Bachlet and Carter. Before trial, Bachlet filed a motion to suppress all recordings obtained pursuant to the *Glass* warrant, arguing that the state failed to comply with AS 12.37, Alaska's wiretapping statute, when obtaining the warrant.[6] In an

**6.** AS 12.37.010 provides:
**Authorization to intercept communications.** The attorney general, or a person designated in writing or by law to act for the attorney general, may authorize, in writing, an ex parte application to a court of competent jurisdiction for an order authorizing the interception of a pri-

vate communication if the interception may provide evidence of, or may assist in the apprehension of persons who have committed, are committing, or are planning to commit, the following offenses:
(1) murder in the first or second degree under 11.41.100–11.41.110;

Order dated October 23, 1994, Superior Court Judge Donald D. Hopwood denied Bachlet's suppression motion:

> The 1993 Alaska wiretapping statute, AS 12.37.010–900, does not create a general rule applicable to all warrants for the interception of communications. Instead, the statute provides an exception to the general statutory prohibition on eavesdropping under AS 42.20.300(b).[7]
>
> In this case, Phillip Carter, a participant to the conversation, consented to the interception of the communication by the Alaska State Troopers. Eavesdropping that is authorized by a party to the communication falls outside the scope of AS 42.20.300(b). Thus, the intercepted communication is not controlled by the newly enacted AS 12.37.
>
> Furthermore, the longstanding rule in Alaska that the police may lawfully intercept private communications with the consent of a participant if they first obtain judicial authorization (a *Glass* warrant) has not been modified by the statute.

Judge Hopwood's ruling appears to us to be correct. The legislative history of AS 12.37 establishes that this chapter was enacted to parallel 18 U.S.C. §§ 2510–21, which provides for exceptions to the general prohibition against the interception of communications unless at least one party consents. In fact, Governor Hickel's transmittal letter to the legislature points out that federal legislation authorizes state legislatures to adopt procedures, similar to federal procedures, which permit obtaining authorization to intercept communications that would otherwise be prohibited by 18 U.S.C. §§ 2510–21. *See* 1993 House Journal at 488–89. The state points out that the federal law, after which AS 12.37 appears to be modeled, does not apply to participant monitoring situations. *See* 18 U.S.C. § 2511(2)(c) ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."). It seems clear to us from the legislative history that in passing AS 12.37 the legislature intended to expand authorization for the interception of communications and to provide procedures similar to those provided in federal law, rather than to eliminate the interception of communications where a participant to the conversation has consented to the interception when the police have obtained a *Glass* warrant. We accordingly conclude that the trial court did not err in denying Bachlet's motion to suppress.

Bachlet claims that the trial court erred in refusing to dismiss the indictment against her because the prosecutor did not present exculpatory evidence to the grand jury. *See* Alaska Rule of Criminal Procedure 6(q); *Frink v. State*, 597 P.2d 154, 164–66 (Alaska 1979). Bachlet argues that the tape recordings of her conversations with Carter and the transcripts which were based upon the tape recordings were exculpatory in nature and that the state should have been required to present this evidence to the grand jury rather than having a state trooper summarize the conversations. The trial court rejected Bachlet's contention. We do also. The tapes and transcripts were not "substantially favorable" to Bachlet such that the prosecutor would have been required to present this evidence to the grand jury. *See Tookak v. State*, 648 P.2d 1018, 1021 (Alaska App.1982).

(2) kidnapping under AS 11.41.300; or
(3) a class A or unclassified felony drug offense under AS 11.71 (§ 1 ch. 61 SLA 1993).

7. AS 42.20.300 provides, in relevant part:
   **Unauthorized publication or use of communications.**
   (a) Except for a party to a private conversation, a person who receives or assists in receiving, or who transmits or assists in transmitting a private communication may not *divulge* or publish the existence, contents, substance, purport, effect, or meaning of the communication, except through authorized channels of transmission or reception. . . .
   (b) Except as provided in AS 12.37, *a person not authorized by a party* to the communication may not intentionally intercept a private communication or divulge or publish the existence, contents, substance, purport, effect, or meaning of the intercepted communication to any person.
   (Emphasis supplied.)

Bachlet next contends that the trial court erred in denying her motions for judgment of acquittal. When determining whether the state presented sufficient evidence to support a conviction, this court must view the evidence and all inferences therefrom in the light most favorable to the state. This court is to find the evidence insufficient to support the conviction only if fair-minded jurors could not find the defendant guilty beyond a reasonable doubt based on the evidence before it. *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981).

However, as we have previously stated, the evidence against Bachlet, if believed, would establish the elements of the offense of receiving a bribe. We similarly find sufficient evidence to uphold Bachlet's conviction for misconduct involving a controlled substance in the sixth-degree for possession of the marijuana which was in her possession when she was arrested.

Bachlet was convicted of three counts of solicitation under AS 11.31.110(a) and AS 11.71.040(a)(2), (a)(3)(F), and (a)(5), which provide, respectively:

**Solicitation.** A person commits the crime of solicitation if, with intent to cause another to engage in conduct constituting a crime, the person solicits the other to engage in that conduct.

**Misconduct involving a controlled substance in the fourth degree.** (a) Except as authorized in AS 17.30, a person commits the crime of misconduct involving a controlled substance in the fourth degree if the person

. . . .

(2) manufactures or delivers, or possesses with the intent to manufacture or deliver, one or more preparations, compounds, mixtures, or substances of an aggregate weight of one ounce or more containing a schedule VIA controlled substance;

(3) possesses

. . . .

(F) one or more preparations, compounds, mixtures, or substances of an aggregate weight of one pound or more containing a schedule VIA controlled substance; or

. . . .

(5) knowingly keeps or maintains any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is used for keeping or distributing controlled substances in violation of a felony offense under this chapter or AS 17.30[.]

At trial, the state presented the taped conversations between Bachlet and Carter to the jury. These conversations, taken in the light most favorable to the state, would permit the jury to infer that Bachlet solicited Carter to help her establish a marijuana-growing operation. However, at argument the state conceded that the three counts of solicitation should constitute a single offense, and thus merge pursuant to *Whitton v. State*, 479 P.2d 302 (Alaska 1970). We conclude that the state's concession is sound and that Bachlet's three solicitation convictions should merge into a single offense.

The conviction is AFFIRMED with the exception of the merger of Counts IV, V and VI.

MANNHEIMER, J., concurring.

MANNHEIMER, Judge, concurring.

I am writing separately to explain my views on three details of our decision.

The offense of receiving a bribe defined in AS 11.56.110(a)(2) requires proof that a public servant knowingly accepted or agreed to accept a benefit "upon an understanding or agreement" that the public servant's official conduct would be influenced by the benefit. The majority opinion suggests that, through this language, the statute requires proof of a mutual agreement between the benefit-provider and the public servant. While the facts of Bachlet's case firmly support a finding of mutual agreement between Bachlet and Carter, I do not believe that the statute necessarily requires a "meeting of the minds" between the benefit-provider and the public servant.

The corresponding Model Penal Code bribery provision, § 240.1, uses similar language to define the offense. Under Model Penal Code § 240.1(1), a person commits bribery if

he or she "offers, confers[,] or agrees to confer ... any pecuniary benefit [upon a public servant] as consideration for the recipient's ... exercise of discretion". Likewise, a public servant commits bribery if he or she "solicits, accepts[,] or agrees to accept ... any pecuniary benefit as consideration for the recipient's ... exercise of discretion". Explaining this language, the drafters of the Model Penal Code stated:

[O]ne who agrees to confer a benefit upon another as consideration for official action by the other party, both as a matter of the common sense of these terms and by analogy to the law of conspiracy, is one who knows that he is committing himself to confer a benefit and who desires that the benefit be in exchange for official action. The same is true of [a public servant] who agrees to accept a benefit as consideration for his official action.... Thus, the term "agrees" should be construed as expressing a unilateral concept, much as the words "agrees with such other person" are construed in [the Model Penal Code provision defining "criminal conspiracy",] Section 5.03. The result is that "agrees" does not necessarily mean a bilateral agreement signifying an actual meeting of the minds. It is sufficient if the actor believes that he has agreed to confer or agreed to accept a benefit for the proscribed purpose, regardless of whether the other person actually accepts the bargain in any contract sense.

American Law Institute, *Model Penal Code and Commentaries* (Official Draft & Revised Comments 1980), Comment to § 240.1 (footnotes omitted), found in the volume labeled "Part II, §§ 240.0 to 251.4" at page 20.

This commentary indicates that a public servant violates AS 11.56.110(a)(2) regardless of whether the intended benefit-provider ever "agrees" to provide the benefit in the sense required to establish a contract. The commentary also indicates that the public official's bad faith is no defense—that the offense is committed regardless of whether the public servant really intends to follow through on the promised official action. The facts of Bachlet's case do not raise these issues, and so there is no need to decide them now. However, the majority opinion's broad language about "mutual agreement" must be understood in this context.

On the collateral issue of what the statute means by "agreement or understanding", I interpret the legislature's inclusion of the word "understanding" as an attempt to reach not only express agreements but also the informal type of agreement that is communicated in an indirect way but still manifests a "mutual comprehension ... of ... intentions". *See Webster's New World Dictionary of American English* (Third College Edition, 1988), page 1455.

Regarding the merger of the three solicitation charges under *Whitton v. State,* 479 P.2d 302 (Alaska 1970), the State conceded at oral argument that these charges were all based upon Bachlet's solicitation of Carter to help her establish a marijuana growing operation. Because Bachlet intended to engage in large-scale marijuana cultivation, Bachlet's proposal necessarily envisioned that she and Carter would possess more than one pound of marijuana (Count V of the indictment), that she and Carter would deliver or sell one ounce or more of marijuana (Count VI of the indictment), and that she and Carter would maintain a building or other structure to be used for keeping or distributing marijuana (Count VII of the indictment).

While these three counts are all valid theories as to why Bachlet's proposal to Carter amounted to criminal solicitation, these counts do not "involve[] differences in intent or conduct ... substantial or significant enough to warrant multiple punishments" when evaluated "in light of the basic interests of society to be vindicated or protected". *Whitton,* 479 P.2d at 312. The State forthrightly conceded this at oral argument, and the concession is well-founded. *Marks v. State,* 496 P.2d 66, 67–68 (Alaska 1972).