Patrick Lee STRANE, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,
Appellee.**

No. A–10566.

Court of Appeals of Alaska.

March 25, 2011.

Henry E. Graper, III and Max D. Holmquist, Gorton, Logue, and Graper, Anchorage, for the Appellant.

Jennifer Messick and David M. Hammond, Assistant Municipal Prosecutors, and Dennis A. Wheeler, Municipal Attorney, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

This case requires us to clarify the culpable mental state that must be proved in prosecutions under the Municipality of Anchorage's concealment-of-merchandise ordinance, Anchorage Municipal Code (AMC) 8.15.050.B. This ordinance makes it a crime for a person to "knowingly conceal" merchandise when the person is on the premises where the merchandise is stored or is offered for sale.

We conclude that when a defendant is prosecuted under this ordinance, the government must prove that the defendant concealed the merchandise (in the sense of knowingly placing the merchandise where it would be out of sight) and that the defendant did so with the intent of concealing—i.e., hiding—the merchandise from its rightful owner (or the owner's employees or agents).

In the present case, the jury was not instructed that the Municipality had to prove an intent to conceal from the rightful owner. In fact, the prosecutor actively argued to the jury that it was irrelevant whether the defendant acted with this intent or, instead, with an innocent intent when the defendant put the merchandise out of sight. For this reason, we reverse the defendant's conviction.

### Background

On March 25, 2009, a loss-prevention officer at a downtown Anchorage grocery observed Patrick Strane put about a dozen items into a shopping cart. These items included a prime rib, a beef pinwheel, king crab legs, a package of ahi poke, a gallon of milk, and some Italian mushrooms. The value of the prime rib and the king crab legs alone was approximately $80.

While the loss-prevention officer continued to watch Strane, Strane pushed his shopping cart to an area of the store where there appeared to be no one else around. Strane then pulled four opaque plastic bags out of his pocket—bags that carried the grocery store's logo, and that were the same as the ones used by store employees to bag customers' purchases. Strane placed all of the items in his shopping cart into these plastic bags. While Strane was loading the items into the bags, he repeatedly looked up and down the aisle, apparently checking to see if anyone was paying attention to him.

After Strane finished bagging the items in his cart, he pushed the cart toward the store exit, bypassing the check-out aisles. However, as Strane neared the exit door, he saw a uniformed store manager standing nearby. Upon seeing the store manager, Strane pushed the shopping cart away from the exit and into the deli section of the store, where he abandoned the cart and all its contents. Strane then began walking toward the exit again. This time, the loss-prevention officer stopped him, and Strane exclaimed, "I never took the stuff out of the store."

Strane was charged with concealment of merchandise under AMC 8.15.050.B. As we indicated earlier, this ordinance states that a person commits the crime of concealment of merchandise if the person "knowingly conceals upon or about his or her person any merchandise or thing of value upon the premises where such merchandise or thing of value is kept for the purposes of sale, barter or storage." [1] The ordinance then adds "Any merchandise or thing of value found concealed upon or about the person and which has not theretofore been purchased by the person is prima facie evidence of knowing concealment." [2]

At Strane's trial, the municipal prosecutor took the position that Strane concealed the

---

1. AMC 8.15.050.B.

2. *Id.*

merchandise because he was preparing to steal it. Strane took the stand and testified that he did not intend to steal from the store—that he bagged the items in the shopping cart because he did not want the liquid from the beef to contaminate the other foodstuffs.

When the municipal prosecutor delivered her summation to the jury, she argued that Strane's explanation for his conduct was unbelievable. But the prosecutor also argued that it did not matter whether Strane's explanation was believable or not—because, under the ordinance, Strane's explanation for putting the items in the bags was irrelevant:

> *Prosecutor:* [The ordinance requires] that you have to conceal [the merchandise]. . . .
>
> The [required] mental state . . . of this crime . . . [is] knowingly. Pretty self-explanatory; [it means that] you do something, [and] you're aware that what you're doing is of that nature. Pretty self-explanatory. The mental state of knowingly will also be defined for you [in the jury instructions,] but it's not rocket science, okay?
>
> So basically Mr. Strane had to know that when he was putting [the] items into a bag that he was concealing them; that you wouldn't be able to see them. Notice [that] what is not required is for [the Municipality] to prove any kind of motive, . . . any kind of intent. [Our burden is to prove just] that he [did it] knowingly. Okay? Now, [the offense] occurs at the time . . . that you conceal those items. [The ordinance] doesn't say anything about walking out of a store, doesn't say anything about timing, it just says you have to conceal it.

The jury convicted Strane, and he now appeals.

### Discussion

#### The elements of the crime of concealment of merchandise codified in AMC 8.15.050.B

Strane argues that the concealment-of-merchandise ordinance is unconstitutionally vague. A criminal statute or ordinance is unconstitutional when it is "so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application."[3] When we consider a vagueness challenge, we may consider whether we can give the statute or ordinance a narrowing construction that will provide constitutionally adequate notice.[4] In particular, a requirement of specific intent may protect a law from a vagueness challenge.[5]

Nearly thirty years ago, in *Smith v. Anchorage,*[6] this court addressed a constitutional challenge to an earlier version of Anchorage's concealment-of-merchandise ordinance. We concluded that, unless the ordinance was interpreted to require proof of a culpable mental state, it would pose the constitutional problem of authorizing criminal convictions for people who had no criminal intent.[7] We therefore held that the ordinance should be interpreted to require the government to prove that the defendant acted with an intent to conceal the property.[8]

In *Smith,* we acknowledged that concealment-of-merchandise ordinances are designed to eliminate the government's need to prove the "intent to steal" that is traditionally an element of larceny.[9] We therefore recognized that the "intent to conceal" required by the Anchorage ordinance was not equivalent to an "intent to steal" or an "intent to permanently deprive."[10] However, we concluded that the ordinance would not be constitutional if it was interpreted to apply to any and all acts of concealment, re-

---

3. *State v. Lawler,* 919 P.2d 1364, 1365–66 (Alaska App.1996) (quoting *F/V Am. Eagle v. State,* 620 P.2d 657, 665 (Alaska 1980)).

4. *See Dykstra v. Anchorage,* 83 P.3d 7, 9 (Alaska 2004); *Stock v. State,* 526 P.2d 3, 11 (Alaska 1974).

5. *See Turney v. State,* 936 P.2d 533, 543 (Alaska 1997).

6. 652 P.2d 499 (Alaska App.1982).

7. *Id.* at 502.

8. *Id.*

9. *Id.* at 501–02.

10. *Id.* at 502.

gardless of the defendant's motive or purpose.[11]

There is a potentially significant difference between the earlier version of the ordinance that we construed in *Smith* and the current version of the ordinance (under which Strane was prosecuted). The earlier version of the ordinance defined the actus reus of the crime as "willfully" concealing merchandise, while the current version uses the phrase "knowingly conceal." [12] Both Strane and the Municipality agree that the current version of the ordinance should be read to incorporate the element of "intent to conceal," and that the ordinance would be unconstitutional without that element. However, Strane and the Municipality disagree as to the precise meaning of "intent to conceal."

The Municipality takes the position that the "intent to conceal" required by *Smith* is merely a component of the statutory requirement that the defendant "knowingly" conceal the merchandise.

Title 8 of the Anchorage Municipal Code expressly incorporates the definitions of the four culpable mental states used in the state criminal code.[13] As defined in AS 11.81.900(a)(2), the culpable mental state of "knowingly" (when applied to conduct) means that "the person is aware that the conduct is of that nature."

The Municipality argues that, given this definition of "knowingly," and given the fact that Strane's jury was instructed on this definition, the jury could only have convicted Strane if the jurors concluded that Strane acted with an awareness that he was concealing the merchandise in the shopping cart. Thus, the Municipality concludes, the jury found the element of "intent to conceal."

But this interpretation of "knowing concealment" does not cure the ordinance of its constitutional infirmity; it does not eliminate the risk we identified in *Smith*, that people could be convicted under the ordinance even though they had no criminal intent.

Grocery stores often have separate areas within them—for example, a pharmacy, an electronics center, or a café and deli—where items can be separately purchased, even though the person intends to continue shopping in the store. If the Anchorage concealment-of-merchandise ordinance were interpreted literally, a person would violate the ordinance if they made a pharmacy purchase and then placed the purchased item in their pocket, or in an opaque shopping bag, while they remained in the store and continued to shop for other items. The person would have "knowingly concealed" merchandise while "upon the premises where such merchandise . . . is kept for the purposes of sale, barter or storage." [14]

This result is certainly counter-intuitive. Moreover, the second sentence of the ordinance clearly suggests that the ordinance was not aimed at people who knowingly conceal purchased merchandise, but rather people who knowingly conceal unpurchased merchandise. This second sentence states, "Any merchandise or thing of value found concealed upon or about the person *and which has not theretofore been purchased by the person* is prima facie evidence of knowing concealment [for purposes of this ordinance]." [15]

In other words, it appears that the Anchorage Municipal Assembly was not trying to outlaw a person's concealment of paid-for merchandise, but only the concealment of unpurchased merchandise. This means that the ordinance should be interpreted to require proof of something more than a person's mere act of knowingly concealing merchandise while on commercial premises.

In addition, there are circumstances where a person might knowingly conceal an unpurchased item even though they fully intend to pay for the item before leaving the store. For example, a person who is shopping with their young children might conceal candy from the children, even though the person has every intention of paying for the item at

---

11. *Id.* at 502–03.

12. *Id.* at 500 n. 1.

13. *See* AS 11.81.900(a)(1)-(4); AMC 8.05.010.B.

14. AMC 8.15.050.B.

15. *Id.* (emphasis added).

the check-out counter. Similarly, a person who is shopping with their spouse might conceal an anniversary card (again, with the intention of paying for it).

The distinguishing feature of these examples is that, even though the person has knowingly concealed the merchandise (in the sense of knowingly placing it out of view), the person's purpose is not to hide the merchandise from the store owner or the store employees. We conclude that the concealment-of-merchandise ordinance should not be read to apply to such circumstances.

Strane also argues that the word "conceal" and the phrase "upon or about their person" are unconstitutionally vague. But these terms have an ordinary meaning that is commonly understood.[16] A reasonable person could foresee that they commit an offense if they conceal merchandise in a shopping cart that they are pushing with the intent to conceal the merchandise from the store owner.[17] We conclude that the shoplifting ordinance is not unconstitutionally vague if we apply the narrowing construction we first adopted in *Smith.*

Accordingly, we hold that AMC 8.15.050.B must be read to require the Municipality to prove the following: (1) that the defendant concealed merchandise upon or about his person; (2) that the defendant was on the premises where the merchandise was kept for the purpose of sale, barter, or storage; (3) that the defendant had not purchased the merchandise; and (4) that the defendant intended to conceal the merchandise from the store owner or the owner's employees.

*Application of our holding to Strane's case*

■ Strane's jury was not instructed that the Municipality was required to prove that he acted with the intent to conceal the merchandise from the store employees or to hide the fact that the merchandise had not been paid for. Strane did not object to this omis-

sion at the time, but the fact remains that the jury was not asked to reach a decision on all the necessary elements of the offense. Accordingly, we must reverse Strane's conviction unless we are convinced that this error was harmless beyond a reasonable doubt.[18]

As we explained earlier, the prosecutor at Strane's trial openly argued to the jury that it did not matter whether the jurors believed Strane's explanation for his conduct—that the offense was complete when Strane knowingly placed the groceries in the opaque shopping bags, regardless of his reason for doing so.

Given the jury instructions and the prosecutor's argument, it is possible that the jury convicted Strane of concealment of merchandise even though the jurors believed that when Strane put the groceries in the shopping bags, he did so to ensure that the liquid from the beef did not leak into the other groceries, and not with an intent to conceal the merchandise from the store employees or to hide the fact that the groceries were not paid for. We are unable to say that the failure to instruct the jury on the required culpable mental state was harmless beyond a reasonable doubt.

Accordingly, we conclude that the failure to instruct the jury on the culpable mental state was plain error, and Strane's conviction must be reversed.

### Conclusion

We REVERSE the district court's judgment. Strane is entitled to a new trial.

---

**16.** *See generally Bachlet v. State,* 941 P.2d 200, 205 (Alaska App.1997) (stating that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979))).

**17.** *See De Nardo v. State,* 819 P.2d 903, 906 (Alaska App.1991) (addressing the meaning of the statutory phrase "concealed on the person").

**18.** *See generally Dailey v. State,* 65 P.3d 891, 896 (Alaska App.2003) (holding that constitutional error is a ground for reversal of a conviction unless the error is harmless beyond a reasonable doubt).